UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROSS ELLIOTT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 1:08 cv-02005 |
| | ) |
| CARMAX AUTO SUPERSTORES, INC. | ) |
| | ) |
| Defendant. | ) |

## CERTIFICATE OF SERVICE

TO:  Mr. Bruce Terlep
Swanson, Martin & Bell
2525 Cabot Dr., Suite 204
Lisle, Illinois 60532

PLEASE TAKE NOTICE THAT ON July 31, 2008, there was filed with the clerk of the District Court, **Plaintiff's Supreme Court Rule 26(a)(2) Disclosure**, a copy of which is attached hereto and herewith served upon you.

By: s/Scott M Cohen
Attorney for Plaintiff

Name:           KROHN & MOSS, LTD.
Attorneys For:  Plaintiff
Address:        120 West Madison Street, 10th Floor
City:           Chicago, Illinois 60602
Telephone:      (312) 578-9428

## PROOF OF SERVICE

The undersigned, attorney for Plaintiff, certifies that I served this notice by mailing it to the above named party at the above referenced address by regular mail on July 31, 2008, by 5:00 p.m. from 120 West Madison, Chicago, Illinois 60602, in an envelope with first class postage prepaid thereon.

By: s/Scott M Cohen
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROSS ELLIOTT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:08-cv-02005 |
| ) | |
| CARMAX AUTO ) | |
| SUPERSTORES, INC. ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFF'S OPINION WITNESS DISCLOSURE

NOW COMES the Plaintiff, ROSS ELLIOTT, by and through his attorneys, KROHN & MOSS, LTD., and makes the following disclosure:

1. **Name and Address of Witness:**

    Mr. Bob Eppes
    7616 Westgate St
    Lenexa KS 66216

2. **Subject of Witness Testimony:**

    This witness will testify regarding the odometer rollback that existed at the time this vehicle was sold to the Plaintiff. Also, this witness will testify as to the ease with which the selling dealership could determine if the odometer on the subject vehicle had been replaced, if it was not personally known, as well as the affect that the vehicle's current condition and history may have on any potential buyers in the future. This witness will also testify regarding any safety concerns that the Plaintiff should have with the vehicle.

3. **Opinions and Conclusions:**

    This witness will testify regarding the retail value and total loss in value of the subject vehicle. He will opine that the decrease in value of the subject 2002 Honda CR-V will be as much as 40-50% when compared to the value of a like kind vehicle with actual mileage.

1

In addition to the above, this witness will testify that if Plaintiff attempts to sell the subject vehicle in the future, potential buyers may not be willing to take the risks involved in purchasing a vehicle with an "odometer discrepancy."

He will further testify that the amount of loss in value is a conservative figure.

4.  **Bases for Opinions**:

This witness's opinions are based upon his inspection of the subject vehicle performed on or about May 28, 2008 at a mutually agreed upon location. Also, they are based upon his experience in the automotive repair industry (see attached *curriculum vitae*).

5.  **Qualifications of Witness:**

See attached *curriculum vitae*.

6.  **Report of Witness**:

See attached reports.

                            Respectfully submitted,
                            **ROSS ELLIOTT**


                            By: s/Scott M Cohen
                                Attorney for Plaintiff

KROHN & MOSS, LTD.
Attorney for Plaintiff
120 West Madison Street, 10th Floor
Chicago, Illinois 60602
(312) 578-9428

Robert L. Eppes
7616 Westgate St.
Lenexa, KS 66216

*Education:*

Tarkio College, St. Louis, Missouri, graduated 1983. B.S. degree in Criminal Justice Management.
Greater St. Louis Police Academy, St. Louis, Missouri, 1977. 640 hours basic training.
Ongoing professional training and development as described below.

*Experience:*
April 2005 to Present – Automotive Fraud Consultant & Certified Personal Property Appraiser
Review motor vehicle transactions; including title documents, financial documents, ownership documents on vehicles involving in fraud including but not limited to odometer, salvage, rebuilt wrecked vehicles, theft, improper repairs. Provide vehicle inspections services for obviousness and damage relating to vehicle sales. Provide personal property appraisals upon request. Provide related investigative training to law enforcement and organizations upon request. Attend auto auctions and related sales.

December 1983 – April 2005:
Special Agent in Charge - Deputized United States Marshal
Odometer Fraud Staff, National Highway Traffic Safety Administration ("NHTSA"), United States Department of Transportation- Kansas City, Missouri.

Duties and responsibilities include conducting criminal investigations of large scale interstate odometer and related title fraud rings, providing assistance to federal, state, and local law enforcement agencies engaged in similar investigations, and coordinating and developing odometer fraud countermeasure programs for state agencies. My area of responsibility includes 14 states in the central United States, from Minnesota to Texas.

Conducted over 560 criminal investigations of odometer and title fraud, and assisted other local, state and federal law enforcement agencies by providing investigative research, enforcement assistance, preparation and execution of search warrants, interviewing suspects, conducting audits of dealerships, lease companies, repair facilities, salvage yards and other related facilities.

Maintain frequent contact with individuals familiar with odometer and title fraud; often speak with other investigators and regulatory agency personnel active in regulating and licensing wholesale and retail automobile dealers, titling personnel, and all others involved in the used car industry, including consumers victimized by odometer fraud.

Familiar with the legal and illegal title practices used to conceal odometer, salvaged or rebuilt vehicles. Have interviewed many individuals who have engaged in the illegal practice of altering titles or have engaged in the practice of fraudulently obtaining titles by "title washing."

Attend meetings and training presentations of the National Odometer and Title Fraud Enforcement Association, Midwest Odometer and Title Fraud Enforcement Association, and International Association of Auto Theft Investigators Association where methods to hide, alter, or remove detrimental information was discussed and presented. Attended training regarding the proper and improper repair techniques used within the industry. Attended, organized, and provided training to local, state, and federal agencies and task forces engaged in combating auto theft, odometer fraud, and salvage fraud. Knowledgeable in techniques to hide indications of prior damage which fraudulently increases the value of prior wrecked or salvaged vehicles.

Have reviewed thousands of legal and illegal sales documents; possess knowledge of the techniques used to remove, hide, or obliterate information on titles; familiar with the movement of title documents intra and interstate that hides or removes information from motor vehicle titles; familiar with the practices and techniques of "title washing."

Formal and informal title fraud training from other law enforcement colleagues, their agencies, professional organizations, and private corporations regarding these techniques. As a result of my training and experience, I have provided formal and informal training to other local, state and federal agencies regarding the identification and detection of such alteration and title washing methods.

Interviewed numerous victims of odometer fraud, rebuilt wreck, or rebuilt salvage fraud, and have reviewed and discussed with them the problems that they have associated with the disposal of these vehicles; familiar with the effect on value that certain disclosures have on vehicle prices. Trained and certified as a personal property appraiser specializing in motor vehicles.

Interviewed officers of financial institutions, lending organizations, institutional and private floor planners relating to problems involved with vehicles with altered odometers, rebuilt wrecked, recovered thefts and/or salvaged vehicles.

**Teaching Experience:**
College Instructor – Colombia College, Jefferson City, Missouri – Fall 1983. Criminal Investigations Course.

Specialist Police Instructor – St. Charles County Law Enforcement Academy-1979-1980. Provided training in Auto Theft Investigations, Motor Vehicle and Highway Safety Laws, Basic Criminal Investigation Techniques, Interview and Interrogation Techniques.

Generalist Police Instructor - St. Charles County Law Enforcement Academy -1980. Provided training in Auto Theft Investigations, Motor Vehicle and Highway Safety Laws, Basic Criminal Investigation Techniques, Interview and Interrogation Techniques.

**Professional Affiliations:**
International Association of Auto Theft Investigators. 1987 - present.
National Odometer and Title Fraud Enforcement. 1984 - present.
Midwest Odometer and Title Fraud enforcement Association. 1984 - present.
Mo-Kan Auto Theft Task Force. 1987 - present

**Certifications:**
Certified Appraisers Guild of America - Certified Personal Property Appraiser. 2002 - present.
Certified Radar Instructors by Missouri State Law Enforcement Academy, 1980.
Certified Breathalyzer Operator - Type III - Missouri Division of Health. 1978.
Certified State Motor Vehicle Inspector - Missouri State Highway Patrol. 1974.
Certified Automotive Technician - American Federation of Automotive Industries. 1970.

**Training Attended:**
1985 – National Auto Theft Bureau – Vehicle Theft and Fraud Investigations Training
1985 – Midwest Odometer Task Force Training Conference
1985 – National Odometer and Title Fraud Enforcement Association Training Conference

1986 – Midwest Odometer Task Force Training Conference
1986 – National Odometer and Title Fraud Enforcement Association Training Conference

1987 –Midwest Odometer Task Force Training Conference
1987 - National Odometer Enforcement Association - Training Conference

1988 – Midwest Odometer Task Force Training Conference
1988 - National Odometer and Title Fraud Enforcement Association Training Conference-

1989 - National Odometer Enforcement Association – Reno, Nevada
1989 - Midwest Regional Task Force on Odometer Alterations - Oklahoma City, Oklahoma

1989 - Federal Bureau of Investigation – Training the Trainer
1989- U.S. Department of Justice- Training Course-Internal Affairs, Professional Responsibility, Odometer Fraud

1990 - Midwest Regional Task Force on Odometer Alterations – Dallas, Texas
1990- National Odometer Enforcement Association – St. Petersburg, Florida

1991 - Federal Bureau of Investigation – Document Examination Training
1991- Midwest Task Force on Odometer and Title Fraud Alterations, New Orleans, Louisiana

1992 - International Association of Auto Theft Investigators and Northeast Regional Chapter for, participation in the combined 40th Annual International Seminar - I.A.A.T.I. and 20 Annual Northeast Chapter Seminar, held at Metropolitan Toronto, Ontario, Canada, August 2 - 7, 1992.

1992- Ryerson Polytechnical Institute –IATTI - Continuing Education credits
1992- National Odometer and Title Fraud Enforcement Association- August 9-13, 1992, Indianapolis, Indiana
1992-Midwest Regional Task Force on Odometer Alterations, Kansas City, Missouri. April 1992.

1993-Midwest Task Force on Odometer Alterations, Omaha, Nebraska, April 4-8, 1993.

1994 -Midwest Odometer and title Fraud Enforcement Association. New Orleans, LA, April 3-7, 1994.

1995- National Odometer and Title Fraud Enforcement Association, Completion of 28 hour course in odometer and title fraud. San Diego, California.
1995 -Western States Odometer and Title Fraud Enforcement Association, Las Vegas, Nevada

1996- National Odometer Title Fraud Enforcement Association Annual Conference and Training Session, Charleston, South Carolina
1996-Midwest Odometer and Title Fraud Enforcement Association-Austin, Texas

1997 - Midwest Odometer and Title Fraud Enforcement Association-March 23-27, 1997, Milwaukee, Wisconsin
1997 - National Odometer and Title Fraud Enforcement Association, - August 1997 – Bismarck, South Dakota
12 hours of instruction in odometer and title fraud."
1998 - Midwest Odometer and Title Fraud Enforcement Association-March 29-April 2,1998-Bloomington, MN
1998 - National Highway Traffic Safety Administration- U.S.D.O.T. Instructor/Facilitator Workshop, Overland Park, Kansas
1999 - Midwest Odometer and Title Fraud Enforcement Association. March 28 - April 1, 1999, Springfield, Illinois
1999 - National Odometer and Title Fraud Enforcement Association. -28 Hours Training -August 8-12,1999
Seattle, Washington.

2000 – International Association of Auto Theft Investigators & Mo-Kan Task Force- vehicle, theft, fraud and arson.
2000 - Midwest Odometer and Title Fraud Enforcement Association- May 14-18, 2000, Omaha Nebraska
2000 - Certified Appraisers Guild of America- Certification Program- Branson, Missouri
2000 - National Odometer and Title Fraud Enforcement Association. August 13-17, 2000. Denver, Colorado.

2001 - Midwest Odometer and Title Fraud Enforcement Association. April 8-12, 2001, Indianapolis, Indiana
2001- Area Vocational Training Center – Kansas City, KS – 16 Week Paintless Dent Repair Class

2002 - National Odometer and Title Fraud Enforcement Association
Completed a 28 hour comprehensive training class in Odometer and Title Fraud Investigations that included 8 hour Post Certified Update on Civil Liability. August 11-15, 2002. Anaheim, California.

2002-Lonview College- Kansas City, MO-16 week class- Automotive Automatic Transmissions
2003- ICOR Training-Frame Repair, Structural Sheet Metal Repair and Airbag Safety-Vision Quest -Overland Park, Kansas (April)

2003-Lonview College -Kansas City, MO- 16 week class-Automotive Electrical Systems

2003-Midwest Odometer and Title Fraud Enforcement Association, Louisville, KY, April 13-17, 2003

2003- National Odometer and Title Fraud Enforcement Association

2004-Midwest Odometer and Title Fraud Enforcement Association – Bloomington, MN April 2004
    Included Title Document Security Fraud Training, Handwriting Analysis Training
2005-Longview College-Kansas City, MO- 16 week class- Automotive Front Suspension and Alignment

2006-Midwest Odometer & Title Fraud Enforcement Association
Included fraudulent document training , flood vehicle inspections

2006-Longview College, Kansas City, MO-16 week class -Automotive Brakes

### Training provided to other agencies/organizations:

1986 -Louisiana Used Motor Vehicle and Parts Commission – Odometer and Title Fraud

1987 -Louisiana New Car Dealer's Association – Regulatory Compliance

1987 -International Association of Auto Theft Investigators Training Conference- Salt Lake City, UT

1988 -Topeka Police Dept-Capital Area Auto Theft Seminar-Odometer and Title Fraud Training

1989 -Kansas Department of Revenue-Dealers Section-Odometer and Titling Fraud

1989 -U S. Department of Justice-OCL-Odometer and Title Fraud.

1993 -Federal Bureau of Investigation-Dallas, TX-Odometer and Title Fraud

1993- IAATI-North Central Region Chapter- Odometer & Title Fraud Investigations- Louisville, KY

1994 -Texas Department of Transportation- Dealers Section-Odometer and Title Fraud

1995 -U S. Department of Justice–Office of Consumer Litigation-Washington, D.C.- Title Fraud and Floor planning

1995- National Odometer and Title Fraud Enforcement Association – Floor planning
    Charleston, South Carolina, August 4-8, 1995

1995 – Western States Odometer and Title Fraud Enforcement Association – Floor planning and Title Fraud

1996-Oklahoma Used Motor Vehicle Tax Commission & Oklahoma Licensing and Tag Agents-Title Fraud

1999-Missouri Department of Revenue – Criminal Investigation Unit – Odometer and Title Fraud Investigations

1999-MOTFEA-Presented training in Odometer & Title Fraud and Floor planning, Springfield, Illinois

1999-Missouri Attorney General's Office- Odometer and Title Fraud

2000- Minnesota Dept. of Public Safety, Vehicle Crimes Task Force, Feb, 2000, Odometer, Titling & Floor plans

2000-Midwest Odometer & Title Fraud Enforcement Association, August 2000 –Floor planning and Title Fraud–
Omaha, Nebraska

September-2000 - Kane County, Illinois Auto Theft Task Force- Provided basic instruction regarding Odometer and Title Fraud investigative techniques.

2001- Midwest Odometer & Title Fraud Enforcement Association- April 2001, Financial Investigations

2002-National Consumer's Law Center-Baltimore, MD - "Rebuilt Wrecks" –
2002-National Consumer Law Center- Atlanta, GA – "Dealers Under A Microscope"
2003-National Consumer Law Center-Cleveland, Ohio – "Investigative Resources"
2004- Missouri Kansas- Association of Insurance Investigators-Title Fraud Tchniques
2004-National Consumer Law Center –Minneapolis, MN – Follow The Money
2005-U.S. Dept. of Navy sponsored NACA –Jacksonville, FL – Investigative Techniques

## Special Recognition:

Letter of Appreciation from U.S. Secretary of Transportation Norman Mineta-April 2005-20 years of Investigative Service

**Appreciation Award- Midwest Insurance Fraud Investigators- February 2005 for providing Investigative Training**

Appreciation Award presented by Midwest Odometer and Title Fraud Enforcement Association April 2004

**Lance Thomas Achievement Award** presented by National Odometer and Title Fraud Association "For excellence in odometer fraud enforcement." August 27, 1998.

**Appreciation Award** presented by Midwest Task Force on Odometer Alterations. "As an expression of our gratitude for your expertise in combating odometer fraud and your dedication and support to the Task Force." April 1992.

**Superior Achievement Award**, "In recognition for the highest level of performance, which enhanced the mission of the agency." August 1998.

**Superior Accomplishment Award**, National Highway Traffic Safety Administration. "In recognition of high-level performance for a special act or service over and above position requirements." August 1996.

*Previous Employment*

**SAFETY SPECIALIST - Missouri Division Of Highway Safety – Jefferson City, Missouri
August 1981 to December 1983**

Duties
To develop and implement effective regional traffic safety programs, statewide, through organizing committees of government leaders and citizens concerned with their community's problem regarding alcohol-related traffic crashes.

To provide adequate levels of support (material. -acquisition, staff assistance, etc.) for project functions being conducted through related motor vehicle and highway safety programs to ensure the timeliness of project tasks and activities.

<u>Responsibilities</u>
Develop, implement and coordinate statewide comprehensive community alcohol countermeasure programs. Research and develop statewide and regional countermeasure projects. Establish project goals, objectives, tasks, and evaluation methodology and management structures. Prepare statewide and regional project management documents and legal contracts. Provide technical assistance to any local, county or state agency requesting assistance in countermeasure planning.

Evaluate statistical database for crash protection, driver characteristics, roadway hazards and injury severity to support new and improved motor vehicle and highway safety standards and other related safety programs. Analyze and prepare reports of data findings to Governor, legislature, courts, and state planning agencies.

Establish and coordinate the development and training of local and statement government leaders, businessmen, and interested citizens to encourage local participation of the community in a systematic countermeasure approach.

Coordinate with the Missouri Attorney General's Office, Missouri Supreme Court, Department of Mental Health, Division of Health, Department of Revenue, Department of Corrections and Human Resources, and Department of Public Safety for the training of police officers, prosecutors, and judges in the latest issues regarding alcohol, motor vehicle and highway safety.

To be knowledgeable about current or pending Federal Motor Vehicle Safety Standards, rules or codes as applicable to new motor vehicles and equipment, i.e. accelerator control systems, hydraulic/air brake systems, occupant crash protection, seatbelt restraints, fuel systems, and emission control devices.

Coordinate proposed motor vehicle and highway safety legislation with interested industries and groups, i.e. Bus and truck groups, highway users, religious organizations, alcohol beverage distillers and wholesalers, restaurant and bar owners, and citizen activist groups.

Act as liaison and technical advisor for the Missouri Division of Highway Safety and members of the Missouri Senate and House of Representatives.

Coordinate with the National Highway Traffic Safety Administration on management of federally funded motor vehicle and highway safety projects. Develop and conduct seminars, workshops and training programs for both public and private agencies. Also perform public speaking engagements for civic organizations. Prepare and publish on a regular basis, motor vehicle and highway safety articles for statewide dissemination in several safety related publications.

Respond for the Governor, Director of Public Safety, and the Director of Highway Safety, to inquiries regarding motor vehicle and highway safety related issues and projects. Establish and coordinate the development and training of local and statement government leaders, businessmen, and interested citizens to encourage local participation of the community in a systematic countermeasure approach.

Coordinate with the Missouri Attorney General's Office, Missouri Supreme Court, Department of Mental Health, Division of Health, Department of Revenue, Department of Corrections and Human Resources, and Department of Public Safety for the training of police officers, prosecutors, and judges in the latest issues regarding alcohol, motor vehicle and highway safety

To be knowledgeable about current or pending Federal Motor Vehicle Safety Standards, rules or codes as applicable to new motor vehicles and equipment, i.e. accelerator control systems, hydraulic/air brake systems, occupant crash protection, seatbelt restraints, fuel systems, and emissions control devices. Coordinate proposed motor vehicle and highway safety legislation with interested industries and groups, i.e. Bus and truck groups, highway users, religious organizations, alcohol beverage distillers and wholesalers, restaurant and bar owners, and citizen activist groups.

Act as liaison and technical advisor for the Missouri Division of Highway Safety and members of the Missouri Senate and House of Representatives. Coordinate with the National Highway Traffic Safety Administration on management of federally funded motor vehicle and highway safety projects.

Develop and conduct seminars, workshops and training programs for both public and private agencies. Also perform public speaking engagements for civic organizations. Prepare and publish on a regular basis, motor vehicle and highway safety articles for statewide distribution in several safety related publications. Prepared and often responded for the Governor, Director of Public Safety, and the Director of Highway Safety, to inquiries regarding motor vehicle and highway safety related issues and projects.

<u>ACHIEVEMENTS</u>

Provide technical assistance in the organizing and training of the first citizen's activist group in Missouri, subsequently assisted numerous other organize and train. This group became a powerful coalition of concerned citizens. They have been very instrumental in the development of recently passed legislation.

Develop and implemented first statewide seasonal enforcement program. This project has been highly successful by decreasing accidents as much as 50% in target areas. The unique and innovative coordination of city, county and state police agencies, with the support of local government leaders and concerned citizens, has contributed to its success.

Develop and implemented highly successful statewide public information program regarding impaired driving. More than 100 police agencies and 250 businesses/organizations joined this effort. Over 3 million licensed drivers were contacted by the project within 1 year. Coordinated numerous networks of distribution for efficient resource utilization.

Develop and implemented the State's first community's comprehensive alcohol countermeasure program. Developed, implemented and coordinated a regional comprehensive alcohol countermeasure program responsible for an impressive 26% reduction in fatal and serious personal injury accidents in a city of 140,000 population. Project was a result of developing a committee of decision makers, i.e. judges, prosecutors, police, business leaders, education experts, treatment experts and concerned public and private leaders. This committee systematically researched and identified problems, solutions and tasks. This project has gained national recognition for its success and continued efforts in highway safety issues.

Instrumental in establishing training seminars for judges and prosecutors regarding new research, laws and techniques of handling the intoxicated drivers. During a two-year period, 300 prosecutors and judges participated in the latest judicial issues regarding the drinking driver training seminars. Instrumental in the development of training requirements for state approved Breathalyzer operators required the coordination of multi-state/county/local agencies. Developed first state approved roadblock/safety check program.

**SPECIAL INVESTIGATOR-March 1981- August 1981**
**Missouri Department of Public Safety, 621 East Capitol Street, Jefferson City, Missouri**

Duties
To perform in-depth investigations of administrative, civil and criminal violations as defined by state and federal statute, and as directed by the Missouri Department of Public Safety-Director's Office.

Responsibilities
To conduct highly sensitive investigations of individuals within government agencies involved in corruption, and to perform internal investigations of state employees involved in criminal activity.

To organize and manage various covert investigations of organized crime/subversive factions and collect related intelligence information.

To infiltrate, observe and identify various members, associates and affiliations of organized crime/ subversive groups and legally obtain specific evidence for later use in criminal prosecution.
Prepare reports of investigative findings to state and federal law enforcement agencies.

Accomplishments
Organized and directed several undercover investigations of organized crime/subversive groups in cooperation with with Federal Bureau of Investigation, Missouri State Highway Patrol, Missouri Division of Liquor Control, U.S. Department of Treasury. The investigations were successful in the identification and prosecution of participants in crimes of racketeering, narcotics, embezzlement, and organized corruption.

**Police Officer/Special Investigator - St. Charles Police Dept.- St. Charles, Missouri**

November 1978 - March 1981

Duties
Performed criminal investigations under the direction of the St. Charles Police Department and the St. Charles County Prosecuting Attorney's Office.

Responsibilities
To handle special investigations of major felony cases including: Homicide, Rape, Robbery, Embezzlement, Fraud, Racketeering, Corruption, and Narcotics.

Design, develop and implement an effective intelligence information system for the monitoring of activity of criminal suspects, associates, and affiliations. This criminal data therefore could be collected, systematized, analyzed and distribute to various law enforcement agencies.

Prepare reports of investigative findings. Of those reports applicable to criminal prosecution, obtain arrest and/or search warrant applications, execute arrests, and testify in court at grand jury hearings, preliminary hearings, and criminal trials on the federal/state/local court level.

Conduct interviews or interrogations of witnesses and suspects. Conduct long-term surveillance on organized crime members, outlaw motorcycle gangs and individual criminal suspects. Gather tactical and strategic intelligence information.

Accomplishments
1981 - Conducted in-depth investigation of $750,000 embezzlement State court system, which resulted in the arrest and convictions of several state employees, public officials and individuals. Funds were recovered and safeguards established. (See commendations)

1981 - Conducted investigation of large organized burglary ring, resulted in the arrests and convictions of 9 suspects and the recovery of approximately $30,000 stolen property.

1980 - Conducted investigation, apprehension and arrest of suspect wanted for double homicide and several brutal rapes. Suspect had fled through several states before arrest and conviction. (See commendations)

1980 - Apprehended and arrested 4 armed suspects within minutes after committing an armed of a service station/convenience store. Resulted in convictions of all suspects and recovery of funds and cleared 7 additional armed robberies.

1979 - Develop and implemented departmental career path planning program for police officers and participating management.

1978 - Conducted investigation of long-standing burglary ring in which participants were involved in interstate theft of military equipment and weapons. Resulted in the arrest and convictions of 10 persons. (See commendations)

1979 - Conducted investigations of child molestations, rapes and homicide, which lead to arrest and conviction of suspect. Was identified as the most sadistic crime in the history of the county. (See commendations)

**Police Officer/Sgt. -Charlack Police Dept. Charlack, MO (August 1977 - November 1978)**

Duties

To enforce State/Local laws.

Responsibilities

Supervise squad of 5 officers; administer community safety program, related administrative duties. Monitor and evaluate personnel performance. Conduct investigations of criminal violations

To conduct in-depth investigation of all fatal and serious personal injury crashes. To reconstruct from evidence the crash scene and identify causation, speed, points of perception, reaction times, mechanical failures, etc.

Accomplishments
Wrote and revised departmental rules, regulations and operational procedures.
Developed and implemented community relations program for motor vehicle safety checks, pedestrian safety, motorcycle training.

1978 – Established in-service training program, i.e. civil liability, use of deadly force, hostage negotiations, effective personal communications


**Owner/Operator - Wholesale Brake Parts Distribution and Service Center- St. Charles, Missouri**
**June 1976 - August 1977**

Duties and Responsibilities
Owner and operations manager scheduling work assignments, training and supervising 4 employees, maintaining quality and inventory control and customer relations.

Provided technical assistance, employee training and subcontractor services for major automotive service centers in metropolitan St. Louis area, i.e. Sears, Central Hardware, Famous Barr, J.C. Penny's Automotive Center and numerous local area automotive service centers. Included the distribution of information of federal and state safety standards, technical reports and instructions, product recall information and product specifications materials sheets.

**Owner/Operator - Automotive Diagnostic and Repair Center- St. Louis, Missouri**
**November 1973 - June 1976      4778 Lemay Ferry Rd., St. Louis, Missouri**

Duties and Responsibilities
Owned and operated automotive service center, specializing in major/minor automotive and truck repairs. Serviced private and fleet accounts  Specialized in the repairs of front suspensions, brake systems, carburetion, and emission controls.

Operated a certified state automotive safety inspection station. Conducted in-service training for employees. Manage and supervised 8 full time employees. Performed initial service diagnosis and cost estimates. Scheduled work and supervised office personnel.


**Auto Body Repairman**          **Loughborough Auto Body Co.**
**June 1970 - November 1973**    **St. Louis, Missouri**

Employed as apprentice, later became journeyman. Performed body, frame and structural repairs on all makes and models of foreign and domestic vehicles.

Robert L. Eppes
05-08-50
Page 10

## SPECIALIZED TRAINING

**Instructor Training** - Federal Bureau of Investigation,, Jefferson City, Missouri, 5 days, August 1982. Course identified class preparation, presentation techniques, lesson plan development, report writing, and evaluation methodologies.

**I.R.S. Investigator's School** - Internal Revenue Service, Jefferson City, Missouri, 5 days, July 1981. Identified complexities of investigation and reviewed case preparation of white collar crimes. Included systematic intelligence gathering, financial analysis and auditing techniques. Identified the interrelationship of embezzlement, fraud and forgery with organized crime money laundering schemes.

**Management Training Course** - U.S. Department of Transportation, Oklahoma City, Oklahoma, 5 days, September 1982. Identified management techniques of effective program management by utilizing formal goal setting, establishing objectives, and the development of effective evaluation methodologies.

**Communication Skills Seminar** - Missouri Office o Administration,, Jefferson City, Missouri, 3 days, 1982. Enhanced the utilization of negotiation methods, conflict resolution, motivational techniques, brainstorming, crisis intervention.

**Safety Management Course** - National Traffic Management Institute, Central Missouri State University, Warrensburg, Missouri, 12 weeks, 1980. This management program presented the latest developments in: federal and state safety standards, methods of effective utilization of resources quality control and evaluation techniques, utilization of completed staff work and performance based federal and state traffic safety programs.

**Traffic Officers Course** - Mid-States Institute, St. Louis, Missouri, 14 days, May 1979. Course presented methods of integrating inter agencies safety resources, traffic administration and management of community traffic safety programs. Included management techniques for problem identification, analysis, and resource allocation.

**Drug Enforcement Administration** - United States Department of Justice, St. Louis, Missouri, 14 days, December 1978. Course identified interrelations between drug investigations and other types of organized crimes, i.e. auto theft, fraud, embezzlement, white collar crime, money laundering, contract murders, etc. Identified both management and investigative techniques for utilizing interagency data,.

**Forensic Pathology Course**, St. Louis University, St. Louis, Missouri 16 weeks, May 1980. Course identified capabilities of medical/chemical techniques to enhance investigative capabilities. Identified effective utilization of toxicologist, pathologist and other medical experts in the evaluating of evidence and coordination of extensive case preparation.

**Management Personnel Training Course** - Missouri State University, 3 days, May 1978. Course subjects included formal goal setting participatory, management, formal organizational management, personnel management, evaluation and performance measurement.

**Bomb and Arson Investigation** - Greater St Louis Police Academy, St. Louis, Missouri, 40 hours, April, 1978. Course contents were subjects that deal with types of arson and perpetrators, fire frauds, causes and origins of fires, and fire scene investigation. Identified safety measures for crime scene protection/security.

**Organized Crime Course** - National College of District Attorneys, College of Law, University of Houston, Houston, Texas, at Colorado Springs, Colorado, 40 hours, February 1981. Identified latest methods of dealing with organized crime, racketeering and political corruption.

**Management Personnel Training Course** - Central Missouri State University, Jennings, Missouri, 3 days, May 1978. Course subjects were formal goal setting, participatory management, formal organization, motivational techniques and performance objectives.

**Field Training Officer Course**, St. Charles County Law Enforcement Training Center, 8 hours, January 1980. Brief course on in-service training procedures and techniques.

**Training the Trainer Seminar** - Mid-States Institute, St. Louis, Missouri, 3 days, March 1980. Course in basic management techniques.

**Traffic Accident Management Seminar** - Mid-States Institute, St. Louis, Missouri, 3 days, June 1979. Traffic accident investigation, motor vehicle and highway safety laws, civil liability, and selective traffic enforcement programs.

**References**- Provided upon request

<div align="center">
Robert Eppes
Auto Fraud Consultant
Certified Appraiser – C.A.G.A.
7616 Westgate St.
Lenexa, Kansas  66216
(913) 271-3304

**Inspection Report**
**2002 Honda CR-V**
**Owner - Mr. Ross Elliott**
</div>

On 05/28/08, I, Robert Eppes, the below signed party conducted an inspection of a 2002 Honda CR-V, 4 door SUV, dark blue in color, bearing Vehicle Identification # SHSRD78842U003639. The date of manufacture was noted as 06/02, and the odometer read 45,813 miles. The purpose of the inspection was to determine if the vehicle had an altered odometer and also determine if the vehicle sustained previous damage and subsequent repairs. The inspection was requested by Mr. Ross Elliott through his legal counsel, Krohn and Moss Ltd., Consumer Law Center, Chicago, Illinois. The inspection took place in Hoffman Estates, Illinois.

As I walked around the vehicle, I noticed several areas that indicated that the vehicle had undergone collision repair. The hood had foreign particle contamination in the paint surface and there was a difference in the paint surface texture. I opened the hood and observed gray primer on the trailing edge of the hood near the windshield on the left side.

I also observed paint contamination in both front fenders. The left front fender had been repaired and repainted, and the antenna had been improperly masked off. Blue paint was clearly visible on the black rubber antenna base. Paint overspray was present on the inside edge of the fender where the fender adjoins the left front door. Due to paint contamination and surface texture difference, it was obvious the left rear door and left rear quarter panel have been repaired and repainted. On the left rear door, at the leading edge, a secondary coat of paint was delaminating. On the left front door structure, at the roof panel, a paint tape masking line, approximately 4 inches long, was visible.

A paint masking line was also visible around the entire left rear tail lamp assembly and left rear quarter glass. On the left rear quarter panel, there was a large paint sag, approximately 6 inches long, visible on the outer door surface near the beltline. A "run" in the paint, approximately 2 inches long, was visible under the door handle of the left rear door. The paint texture on the repaired panels was different from that of the manufacturer's original paint finish, and the difference is visible. The repairs are not to the manufacturer specifications. Paint thickness was measured.

1

With regard to an odometer discrepancy, I inspected the vehicle for indications that the odometer had been replaced or repaired. When I opened the left front door, (the driver's door), I observed a printed warning notice affixed to the B pillar post, near the door latch stating that Bozak Honda, repaired or replaced the odometer on 07/07/05 and could not be reset the odometer to the actual mileage, and warned that the replacement odometer had been set to zero miles. Due to the mileage being hand printed on the warning label, it was not possible to determine whether the odometer mileage was 30,159 or 50,159 miles at the time of replacement. I have reviewed service documents provided by Mr. Elliott from McGrath Honda in Elgin, IL, whereas McGrath stated on 02/11/08, the mileage on the vehicle was 89,059 miles based upon their inspection of the warning label. Additional information should be available from Bozak Honda, 9800 Indianapolis Blvd., Highland, IN 46322, (219) 922-3100.

Based upon a federal odometer disclosure statement provided for review by Elliott, Carmax, the seller to Elliott, incorrectly issued an odometer disclosure statement to Elliott, declaring the mileage on the odometer showing 33,573 miles as the actual mileage the vehicle had traveled.

*Opinion Based Upon Inspection of Vehicle and Supporting Documents*
Based upon my education, training, knowledge, and experience, it is my opinion that the odometer in Elliott's vehicle has been replaced. It is also my opinion that an experienced dealer or buyer in the trade would or should have known that the odometer had been replaced had they inspected the vehicle. It is my opinion that a dealer or buyer in the industry would and should have found the visible and obvious defects in the paint finish and body work on this vehicle, if they had conducted a reasonable inspection of the vehicle. This vehicle would not pass in the trade without objection.

Based upon my education, training and experience, it is my opinion that owners of vehicles with odometer mileage discrepancies typically suffer significant financial losses when they sell or trade a vehicle. Typical situations that cause vehicle owners to make such declarations include but are not limited to; the odometer having been rolled back, improperly repaired or replaced, an odometer malfunction, or it was or is disconnected. Often owners find documents that indicate the odometer mileage is wrong, or they talk to prior owners, dealership service personnel, or other dealers who advise the odometer reading on their vehicle is incorrect.

The seller is required to make a declaration on a federal odometer disclosure statement based upon his or her knowledge. Three choices are listed on the odometer disclosure statement located on the title. The first choice is to certify the odometer reading is true and actual, the second choice is to mark a box which declares the mileage is in excess of the odometer's mechanical limit, the third choice is to check a box marked "Warning – Odometer Discrepancy".

2

Based upon my education, training, and experience, if a vehicle's owner has knowledge the odometer does not reflect the true and actual mileage the vehicle has traveled, the seller is required to note the discrepancy on the federal odometer disclosure statement, located on the title, by checking the disclosure marked "Warning- Odometer Discrepancy".

A certification on the odometer disclosure by the a vehicle's owner that the vehicle has an odometer discrepancy will subsequently result in a title being by a State with a "brand" or marking on the title, warning buyers that the vehicle has damage or defects that is material and may affect the vehicle's value. Title brands vary from state to state; however, all title brands are detrimental to a vehicle's value. State title "brands" generally include odometer discrepancies, salvaged vehicles and flood vehicles.

Owners of vehicles with odometer discrepancies have limited methods in which to sell their vehicles. The most traditional sale methods used by consumers to sell the vehicles include; trading their vehicle in on another vehicle at a dealership, or selling the vehicle privately by advertising the vehicle in local newspapers. Though other creative methods such as internet selling and public auto auctions may be available, they have a certain area of complexity and sellers often revert to conventional sales techniques.

It is my opinion that Mr. Elliott should make a full and complete disclosure at the time of sale that the odometer reading is not the actual mileage, and the odometer should not be relied upon. In most instances when a seller issues an odometer disclosure statement warning the purchaser that a vehicle's odometer can not be relied upon, the seller will not receive full value of the trade-in or the full value of a outright sale of the vehicle as compared to sale of a vehicle of like kind that has true and actual mileage. Private party sellers are often at a disadvantage when selling or trading their vehicles with an odometer discrepancy disclosure, due to the need or necessity to acquire a vehicle in a short time period.

Most dealers do not want to take trade-in vehicles which have odometer discrepancy problems or have "branded" title problems. If a dealer accepts a vehicle that has been disclosed on the odometer disclosure statement by the customer/seller as having an odometer discrepancy, the vehicle trade-in value is often significantly decreased.

It is my opinion that dealers often penalize individuals trading in vehicles with odometer discrepancies because it is difficult for the dealer to dispose of the vehicles, they are required to announce odometer problems at auctions; or sell the vehicles to other wholesale dealers at decreased prices due to the general lack of interest in these units.

3

The problems associated with these vehicles include but are not limited to; the vehicle title being "branded" forever with warning information; the dealer's inability to provide service contracts or warranties on the vehicle; or the dealer's inability to sell the vehicle as a "certified" vehicle because it fails to meet most manufacturers certification standards. When Mr. Elliott makes a disclosure that the odometer reading should not be relied upon, the subsequent purchaser will receive a title branded "Warning - Odometer Discrepancy", or words to that effect.

It is also common knowledge in the industry that certain private companies collect motor vehicle titling information from state DMV agencies. This titling information is available to the public in the form of vehicle history reports and creates a historical trail of information which decreases the value of the vehicle if the vehicle has derogatory information such as a "branded" title noted within the report.

Based upon my education, training, and experience, most private buyers will refrain from knowingly purchasing a vehicle with an altered or incorrect odometer mileage unless there is a significant decrease in price as compared to a vehicle with true and actual mileage. It is my experience that most buyers want to know the true mileage the vehicle has traveled so that preventative service and maintenance can be performed. Purchasers place a measure of reliability and safety based upon the mileage on the odometer being declared as true and actual.

In conclusion, based upon my prior education, training and experience as an investigator and my current experience as an appraiser, it is my opinion that a vehicle's owner who issues an odometer statement, which states the vehicle's odometer is not actual and can not be relied upon, will not receive full value for their vehicle at time of sale; and may suffer a decrease in value as much as **40 to 50%** of the value of the vehicle when compared to a like kind vehicle with true and actual mileage.

An odometer disclosure with a warning of an odometer discrepancy will result in the purchaser receiving a "branded" title when the vehicle is titled by a State. A title "branded" with the words "Odometer Discrepancy, Flood, Rebuilt Wreck, and Salvage" or other similar warnings will typically result in the vehicle having a diminished value of 40 to 50% as compared to a vehicle without such a brand.

For the previously stated reasons, it is my opinion that the fair market retail value of Elliott's vehicle was significant diminished by the installation of an odometer cluster, and the odometer not being set to the actual mileage the vehicle had traveled. This was further complicated by the substandard repairs, as this vehicle would not past in the industry without objection. At the time of sale, Elliott was provided an odometer disclosure statement declaring the odometer to be "Actual Mileage", when in fact the seller knew or should have known the odometer mileage was false. Elliott should have received a federal odometer disclosure marked "Warning- Odometer Discrepancy". At present, Elliott has knowledge there is an odometer discrepancy and is required to disclose the discrepancy to

4

any subsequent purchaser. It is more likely than not that he suffer a loss in value on his vehicle at the time of sale.

It is my opinion, that in November 2007, the Fair Market Retail Value of a like kind vehicle without an odometer discrepancy, and without damage and subsequent repairs was **$16,000**. It is my opinion, the Fair Market Retail Value of Elliott's vehicle, in November 2007, with an odometer discrepancy and substandard repairs, was **$8850.00**. Industry value guides and publications were also reviewed.

The value stated in this report is based on my best judgment given the facts and conditions available at the date of the valuation. Should additional information become available at a later time, I reserve the right to provide additional opinions.


Signed:

*Robert Eppes*
Robert Eppes
Date: June 6, 2008

5